IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Respondent, | * | |
| v. | * | Crim. No. JKB-05-0286 |
| MONROE HAROLD SMITH, | * | |
| Defendant-Petitioner. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM AND ORDER

Now before the Court is Defendant-Petitioner Monroe Harold Smith's Petition for Writ of Error *Coram Nobis*. (ECF No. 33.) The petition is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2023).

The petition will be granted, and Smith's November 2005 conviction for a violation of 18 U.S.C. § 922(g)(1) will be vacated.[1]

## I.    BACKGROUND

### A.    The Two Disqualifying State Misdemeanor Offenses

In October 1998, Smith was charged in Maryland state court with violating a state handgun law. (ECF No. 39-1 at 1; ECF No. 39-2 at 1.) Maryland law labels that crime a misdemeanor. *See* Md. Code Ann., Crim. Law § 4-203(c)(1) (replacing Md. Code, Art. 27, § 36B(b)). A violation carries a penalty of multiple years in prison, the precise number of which varies based on the conduct and the offender's prior criminal history. *See id.* Smith's charging document listed a maximum penalty of three years' imprisonment. (*See* ECF No. 39-2 at 1.) At Smith's initial

---

[1] Also pending is Smith's Motion to Seal. (ECF No. 34.) In it, Smith seeks to seal two federal presentence reports, currently docketed as ECF Nos. 35 and 35-1. (*See id.* at 1.) That motion will be granted.

appearance, a judicial officer informed him "of each offense with which he [was] charged and of the allowable penalties," which Smith confirmed with his signature. (ECF No. 39-3 at 1.)

With respect to this first offense, the record conflicts about what happened next. Two federal presentence reports, prepared twelve years apart, state that Smith pled guilty and was sentenced to one year in prison, all suspended, with two years of probation. (*See* ECF No. 35 ¶ 14; ECF No. 35-1 ¶ 22.) They also state that, roughly two years later, Smith was found to have violated his probation, for which he received a prison sentence of ten months and twenty-seven days. (ECF No. 35 ¶ 14; ECF No. 35-1 ¶ 22.) But an "Order for Probation," issued by the Maryland court and signed by Smith, states that Smith was originally sentenced to three years in prison, all suspended, with five years of probation. (ECF No. 39-4 at 1–2.) A separate "Commitment Record," also issued by the Maryland court, states that Smith's probation violation led to a prison sentence of two years, not ten months and twenty-seven days. (ECF No. 39-5 at 1.) State court filings show that, a few months after his imprisonment for the violation, Smith moved to modify the sentence, acknowledging twice in his motion that it was set to last two years. (*See* ECF No. 39-6 at 1.) After ten months and twenty-seven days' incarceration, the Maryland court granted Smith's conditional release. (ECF No. 39-7 at 1–2.)

In July 2000, Smith was charged in Maryland state court with second-degree assault and destruction of property. (ECF No. 39-8 at 1; ECF No. 39-9 at 1.) He pled guilty to the assault charge in September of that year. (ECF No. 35-1 ¶ 24.) Under Maryland law, second-degree assault is also considered a misdemeanor. *See* Md. Code Ann., Crim. Law § 3-203(b) (replacing Md. Code, Art. 27, § 12A(b)). A violation carries a penalty of up to ten years in prison. *Id.* This was reflected in Smith's charging document. (ECF No. 39-9 at 1.) At Smith's initial appearance, a judicial officer again informed him of the charged offenses and the maximum penalties, which

2

Smith again confirmed with his signature. (ECF No. 39-10 at 1–2.) He was ultimately sentenced to six months' imprisonment. (ECF No. 35-1 ¶ 24.)

### B.    The § 922(g)(1) Offense

In June 2005, Smith was charged in the District of Maryland with one count of unlawfully possessing a firearm under 18 U.S.C. § 922(g)(1). (*See* ECF No. 1; ECF No. 33-5 at 2.) He pled guilty that September. (ECF No. 33-2 at 4, 7, 9–12; ECF No. 33-5 at 1.)

In relevant part, § 922(g)(1) makes it a crime for someone to possess a firearm if they have previously been convicted of "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Because "felony" is often used as shorthand for any crime punishable by more than one year, § 922(g)(1) is commonly known as the "felon-in-possession" ban. *See United States v. Barronette*, 46 F.4th 177, 199 (4th Cir. 2022) (collecting cases). Despite this name, the ban is also triggered by certain misdemeanors—namely, any state-law misdemeanor punishable by a term of more than *two* years. 18 U.S.C. § 921(a)(20)(B).

Smith's plea agreement stated that the Government would have needed to prove that, at the time of the charged offense, Smith "had been convicted of a crime punishable by imprisonment for a term exceeding one year." (*See* ECF No. 33-5 at 2–3, 8.) And its statement of facts averred that, at the time of the charged offense, Smith "had been convicted of at least one felony punishable by more than one year imprisonment." (*See id.* at 5, 8.) It made no mention of Smith's awareness of his prohibited status at the time of the offense.

Smith was sentenced in November 2005. (ECF No. 33-2.) At the hearing, the Court explained that one of the elements of the offense was that Smith "had previously been convicted of a crime punishable by more than one year imprisonment." (*Id.* at 4 (cleaned up).) Smith said he understood. (*Id.*) He also reaffirmed his assent to the plea agreement. (*See id.* at 9.) When the

3

Government later explained that it would have proven that Smith "had been convicted of at least one felony punishable by more than one year imprisonment," neither Smith's attorney nor Smith objected. (*Id.* at 13–14.) At no point did the Court or any party refer to Smith's awareness of his prohibited status at the time of the offense. Smith was sentenced to thirty-seven months in prison followed by three years of supervised release. (ECF No. 13 at 2.) He has now completed his sentence, (*see* ECF No. 35 at 6–7), and is no longer incarcerated for any other federal offense, *see* Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 13, 2025).

### C.    *Rehaif* and Beyond

Three years after Smith's release on the § 922(g)(1) conviction, the Supreme Court decided *Rehaif v. United States*, 588 U.S. 225 (2019). *Rehaif* established that the Government cannot prove a violation of § 922(g) without proving that the defendant, at the time of the offense, knew that he belonged to the relevant category of people barred from possessing a firearm. *See id.* at 237. In other words, it clarified that a defendant must know the fact that brings him within the sweep of the § 922(g) prohibition (though he need not appreciate the legal significance of that fact). *See id.*; *Barronette*, 46 F.4th at 198–99.

In December 2021, Smith filed the instant *coram nobis* petition. (ECF No. 33.) He argues that his § 922(g)(1) conviction should be vacated on two distinct but similar grounds. First, he contends that the Court accepted his guilty plea without advising him that the Government needed to prove he knew of his prohibited status at the time of the offense. (*Id.* at 2.) On that basis, he says, his plea was not knowingly and intelligently made, violating the Fifth Amendment's Due Process Clause and Federal Rule of Criminal Procedure 11(b)(1)(G). (*Id.*) Second, he contends that because the Government did not proffer that he knew of his prohibited status at the relevant

4

time, there was not a sufficient factual basis for his guilty plea, in violation of Rule 11(b)(3). (*Id.* at 3.) He insists that both errors were prejudicial because, in their absence, there is a reasonable chance he would have gone to trial rather than pleading guilty. (*Id.* at 2–3.)

The Government responds that Smith has procedurally defaulted his *Rehaif* argument, and that, even if he had not, he is not entitled to *coram nobis* relief. (*See* ECF No. 39.)

## II.    LEGAL STANDARDS

Under the All Writs Act, 28 U.S.C. § 1651, federal courts have the power to grant a writ of error *coram nobis* to vacate a conviction after the sentence has been served. *United States v. Mandel*, 862 F.2d 1067, 1074–75 (4th Cir. 1988) (citing *United States v. Morgan*, 346 U.S. 502, 507–11 (1954)). Whether to grant *coram nobis* relief is a question committed to the discretion of the district court. *See United States v. Lesane*, 40 F.4th 191, 196 (4th Cir. 2022) (citation omitted). This "extraordinary" remedy is available in only "extreme" cases. *United States v. Denedo*, 556 U.S. 904, 911 (2009). A petitioner must show that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Lesane*, 40 F.4th at 197 (citation omitted).

Procedural default is a rule that "strictly limit[s] the circumstances under which a [conviction] may be attacked on collateral review." *Bousley v. United States*, 523 U.S. 614, 621 (1998). In general, a petitioner procedurally defaults a claim of error by failing to raise it in an earlier proceeding. *See id.* at 621–22. The only ways to escape procedural default in that circumstance are for the petitioner to show (1) actual innocence—meaning "factual innocence," not "mere legal insufficiency"—or (2) cause for his failure to raise the error earlier *and* actual prejudice from that error. *Id.* at 622–23. This hurdle exists to ensure that collateral postconviction

relief remains "an extraordinary remedy," not a substitute for appeal. *Id.* (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994)). The finality interests served by this rule "ha[ve] special force with respect to convictions based on guilty pleas." *Id.* (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

## III.   ANALYSIS

Smith's § 922(g)(1) conviction will be vacated. He has not procedurally defaulted his *Rehaif* claim. And he has otherwise surmounted the high bar for *coram nobis* relief.

### A.   Smith Has Not Procedurally Defaulted His *Rehaif* Argument.

It is undisputed that the trial court erred in not instructing Smith about the knowledge-of-status requirement. It is also undisputed that Smith did not raise his *Rehaif* argument before that court or on direct appeal. So, to avoid procedural default,[2] he must show (1) actual innocence or, in the alternative, (2) cause and prejudice. *Bousley*, 523 U.S. at 622–23. The Government contends that Smith is unable to show either one. (ECF No. 39 at 3.) Because Smith does not argue the former, (*see* ECF No. 40 at 1–2), the Court considers only the latter.

### 1.   Smith Has Shown Cause for His Belated *Rehaif* Argument.

To overcome procedural default, the putative cause "must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original). One way to show this is by demonstrating "that the factual

---

[2] In choosing to address the Government's procedural-default argument, the Court does not hold that a procedural-default inquiry is actually necessary in the *coram nobis* context. Some courts have held that it is, on the ground that *coram nobis* is just another form of postconviction relief. *See, e.g., United States v. De Castro*, 49 F.4th 836, 847 (3d Cir. 2022). But as far as this Court is aware, the Fourth Circuit has merely spotted the trend, *see Bereano v. United States*, 706 F.3d 568, 577 n.10 (4th Cir. 2013), and has not yet taken the step (at least expressly) of applying the rule in *coram nobis* cases, *see, e.g., Lesane*, 40 F.4th at 197–98, 201 (considering only the four *coram nobis* elements, not the exceptions to default, in a case of actual innocence, the fact of which was undisputed). For that reason, the Court considers the issue without deciding whether that consideration was required.

6

or legal basis for a claim was not reasonably available to counsel." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

A claim cannot have been "reasonably available" if it was "so novel" that counsel would not reasonably have thought or chosen to raise it. *See Carrier*, 477 U.S. at 489–90 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). A claim meets that standard if the claim was not viable until the Supreme Court (1) "explicitly overruled one of its precedents"; (2) "overturned a longstanding and widespread practice to which it had not spoken, but which a near-unanimous body of lower court authority had expressly approved"; or (3) "disapproved a practice it arguably had sanctioned in prior cases." *United States v. McKinney*, 60 F.4th 188, 194 (4th Cir. 2023) (cleaned up) (quoting *Reed*, 468 U.S. at 17).[3]

*Rehaif* is textbook second category. Before that case was decided, Smith was up against "a longstanding and widespread practice to which the Supreme Court had not spoken, but which a near-unanimous body of lower court authority had expressly approved." *Reed*, 468 U.S. at 17 (cleaned up). As Smith put it, at the time of his plea, there was a "wall" of lower-court authority categorically foreclosing the argument the Government now says he should have brought. (ECF No. 40 at 1.) That authority included a decision of the en banc Fourth Circuit, *see United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995), along with decisions of nearly every other federal court of appeals, *see, e.g., United States v. Smith*, 940 F.2d 710, 713–14 (1st Cir. 1991); *United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000); *United States v. Dancy*, 861 F.2d 77, 81 (5th Cir. 1988);

---

[3] The Supreme Court first identified these categories in the context of emergent constitutional rules. *See Reed*, 468 U.S. at 17 (citing *United States v. Johnson*, 457 U.S. at 551). But this Court sees no reason why, as an analytical matter, they should not also guide its inquiry into the novelty of emergent statutory rules, like that announced in *Rehaif. See, e.g., United States v. Garcia*, No. 20-1381, 2021 WL 5994630, at *2 (10th Cir. Aug. 10, 2021) (applying *Reed* in a postconviction *Rehaif* challenge). If anything, the improbability—and thus the novelty—of the *Rehaif* argument is underscored by the fact that *stare decisis* has "special force" in the context of statutory interpretation, making it even harder to disturb a settled statutory construction than a constitutional one. *See, e.g., Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 274 (2014) (citation omitted).

*United States v. Olender*, 338 F.3d 629, 637 (6th Cir. 2003); *United States v. Lane*, 267 F.3d 715, 720 (7th Cir. 2001); *United States v. Kind*, 194 F.3d 900, 907 (8th Cir. 1999); *United States v. Miller*, 105 F.3d 552, 555 (9th Cir. 1997); *United States v. Capps*, 77 F.3d 350, 352–53 (10th Cir. 1996); *United States v. Jackson*, 120 F.3d 1226, 1229 (11th Cir. 1997); *United States v. Alexander*, 331 F.3d 116, 127 n.18 (D.C. Cir. 2003). The Supreme Court had not weighed in. *See Rehaif*, 588 U.S. at 228; *id.* at 238–39, 256 (Alito, J., dissenting).

Under the weight of this "precedential albatross," *Capps*, 77 F.3d at 352, the knowledge-of-status claim could hardly be called "reasonably available." If a claim is within category two, "there will almost certainly have been no reasonable basis upon which an attorney could have urged a . . . court to adopt the position that [the Supreme] Court has ultimately adopted." 468 U.S. at 17. Such is the case here. There was no basis for counsel to raise the knowledge-of-status issue in Smith's proceedings, short of a quixotic effort to convene the en banc Fourth Circuit to overturn itself—or, harder still, to earn certiorari and reversal at the Supreme Court, despite the circuits' near-total accord. When "the state of the law at the time of [one's] appeal did not offer a reasonable basis" to raise a claim, there is cause to avoid default. *United States v. Gill*, 652 F. Supp. 3d 567, 582 (D. Md. 2023) (quoting *Jones v. United States*, 39 F.4th 523, 525 (8th Cir. 2022)).

The Government contends that Smith's claim was not "novel" because identical claims had been "thoroughly and repeatedly litigated" for over three decades. (ECF No. 39 at 8 (citing the Fourth Circuit's rejection of a *Rehaif* claim as far back as *United States v. Williams*, 588 F.2d 92, 92–93 (4th Cir. 1978)).) Many judges, both in their rulings and in their separate writings, have concluded the same.[4] But the law is clear: when a previously silent Supreme Court "overturns a

---

[4] *See, e.g., United States v. Innocent*, 977 F.3d 1077, 1084 (11th Cir. 2020); *Moore v. Warden of FCI Edgefield*, 557 F. Supp. 3d 704, 713 n.8 (D.S.C. 2021); *United States v. Robinson*, Crim. No. ELH-14-0403, 2022 WL 16763734, at *3 (D. Md. Nov. 8, 2022); *Young v. United States*, No. 21-20, 2022 WL 2136864, at *2 (2d Cir. June 14, 2022); *United States v. Pollard*, 20 F.4th 1252, 1259, 1262 (9th Cir. 2021) (Nelson, J., concurring); *United States v. Hisey*, 12 F.4th

longstanding and widespread practice" approved by "a near-unanimous body of lower court authority," it announces a novel rule. *Reed*, 468 U.S. at 17 (cleaned up). And there cannot be near unanimity on anything unless the courts have actually spoken about it. To rely solely on the fact that "the Federal Reporters were replete with cases involving [identical] challenges," *Bousley*, 523 U.S. at 622, would be to hold, paradoxically, that the very thing that lands a claim in the second novelty category also defeats the claim's novelty. Courts instead must look beyond the numbers and consider what those cases actually said. That scores of judges considered, then *rejected*, a claim simply underscores how unorthodox, experimental, and pathbreaking—in other words, novel—that claim was. *See United States v. Harris*, No. CR 13-098, 2021 WL 3408506, at *5 (D. Mont. Aug. 4, 2021), *aff'd*, No. 21-35633, 2022 WL 2593523 (9th Cir. July 8, 2022).

The Government also assails Smith's novelty argument as improperly resting on the earlier futility of his claim. This effort is unavailing. True enough, the Supreme Court has rejected futility as a basis for cause, when "futility" meant only "that a claim was 'unacceptable to [a] particular court at [a] particular time.'" *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)). But a defendant need not "raise and argue every conceivable . . . claim, no matter h[o]w far[-]fetched, in order to preserve a right for post-conviction relief upon some future, unforeseen development in the law." *Reed*, 468 U.S. at 16. The caselaw reveals that cause turns on the extent of the futility encountered, *i.e.*, whether a claim was doomed virtually everywhere or whether it was weak or doomed only in a particular circuit or district. *Compare Reed*, 468 U.S. at 17 (holding there was cause when the futility was rooted in Supreme Court or "near-unanimous"

1231, 1241–42 (10th Cir. 2021) (Phillips, J., dissenting); *Watkins v. United States*, No. 18CR379, 2023 WL 2753240, at *3 (M.D.N.C. Jan. 20, 2023) (collecting cases); *Cross v. United States*, 504 F. Supp. 3d 955, 964–65 (N.D. Iowa 2020) (same); *Stears v. United States*, No. 18-cr-00104, 2021 WL 2534991, at *3–4 (D. Idaho June 21, 2021) (same); *Starks v. United States*, 516 F. Supp. 3d 762, 777 (M.D. Tenn. 2021); *United States v. Carter*, No. 17-CR-0141, 2021 WL 373582, at *2–3 (D. Minn. Feb. 3, 2021); *Ramsey v. United States*, 19CV2643, 2020 WL 5230891, at *10 (E.D. Mo. Sept. 2, 2020); *cf. United States v. De Castro*, 49 F.4th 836, 845–46 (3d Cir. 2022).

lower-court authority), *with Engle*, 456 U.S. at 130 (declining to hold cause when the futility rested on a belief that a court "w[ould] be unsympathetic to the claim"). Smith's claim is of the former variety. Far beyond a mere "subsequent legal development[] [that] made counsel's task easier," *Rehaif* upended this and nearly every other circuit's long-held view of "whether . . . th[at] claim was 'available' at all." *See Smith v. Murray*, 477 U.S. 527, 537 (1986).

This Court joins a minority but still significant number of others to hold that the pre-*Rehaif* wall of authority is cause to avoid procedural default.[5] The majority approach cannot be reconciled with the lessons of *Reed*. And while some courts have suggested that later rulings narrowed aspects of that decision, *see, e.g.*, *Gatewood v. United States*, 979 F.3d 391, 395–96 (6th Cir. 2020) (first citing *Smith*, 477 U.S. at 534–35; and then citing *Bousley*, 523 U.S. at 623), absent some indication to that effect from the Supreme Court, this Court must apply the opinion on its own terms. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower courts] should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions.").

Smith has satisfied the cause element of the cause-and-prejudice inquiry.

---

[5] *See, e.g.*, *United States v. Garcia*, No. 20-1381, 2021 WL 5994630, at *2 (10th Cir. Aug. 10, 2021), *aff'g* No. 17-cr-00132, ECF No. 92 at 4–7 (D. Colo. Oct. 14, 2020); *Harris*, 2022 WL 2593523, at *1, *aff'g* 2021 WL 3408506; *Merritt v. United States*, 499 F. Supp. 3d 249, 258 (E.D. Va. 2020); *United States v. Holden*, No. 16-cr-00048, 2021 WL 1617261, at *3 (D. Nev. Apr. 26, 2021) (collecting cases); *United States v. Dace*, No. 16-cr-00383, 2020 WL 4805761, at *2 (D. Colo. Aug. 18, 2020), *aff'd on other grounds*, No. 20-1343 (10th Cir. Oct. 28, 2021); *Stewart v. United States*, No. 20-cv-01021, 2023 WL 3203112, at *9 (S.D. Ind. May 2, 2023); *Wilkerson v. United States*, No. 20-cv-1157, 2022 WL 10586780, at *5 (E.D. Wis. Oct. 18, 2022); *United States v. Vickers*, No. 11-cr-00063, 2021 WL 640811, at *3 (D. Alaska Feb. 18, 2021); *see also United States v. Moore*, No. 12CR00030, 2021 WL 302745, at *2 & n.3 (W.D. Va. Jan. 29, 2021) (acknowledging that "[d]istrict courts within the Fourth Circuit have disagreed on the issue" and declining to decide it); *Ibarra v. United States*, No. CR17-5002, 2020 WL 7385713, at *2–4 (W.D. Wash. Dec. 16, 2020) (discussing the disagreement more broadly); *United States v. Pollard*, No. 17-cr-00613, 2020 WL 10895316, at *3–4 (N.D. Cal. May 15, 2020) (same, and finding cause).

10

2.    Smith Has Shown Prejudice from the Court's Error.

To show prejudice, a petitioner must show a "reasonable probability"—not a mere possibility—that, but for the error, the result of the proceeding would have been different. *Strickler v. Green*, 527 U.S. 263, 291 (1999). In the context of a plea agreement, this demands a reasonable probability that the petitioner would not have pled guilty and would have instead proceeded to trial. *United States v. Heyward*, 42 F.4th 460, 466 (4th Cir. 2022); *United States v. McClammy*, No. 21-6658, 2023 WL 4700645, at *3 (4th Cir. July 24, 2023).

Whether a defendant would have chosen to go to trial is a "fact[-]specific" question that turns on "the particular circumstances of the individual case." *McClammy*, 2023 WL 4700645, at *3 (first quoting *McKinney*, 60 F.4th at 196 n.5; and then quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). In this context, "courts are rightly skeptical of post hoc claims and place greater emphasis on 'contemporaneous evidence to substantiate a defendant's expressed preferences.'" *Heyward*, 42 F.4th at 467 (quoting *Lee v. United States*, 582 U.S. 357, 369 (2017)). Still, because a defendant may choose to plead guilty for reasons other than a belief that he will lose, he "need not show that going to trial would have been the best objective strategy or even an attractive option; he need only show a reasonable likelihood that a person in his shoes would have chosen" to do so. *Id.* (cleaned up).

The Supreme Court has acknowledged the possibility that some defendants barred from possessing a firearm may have been unaware of their prohibited status. *See Greer v. United States*, 593 U.S. 503, 509 (2021); *Rehaif*, 588 U.S. at 233. But it has also emphasized that showing this is usually "an uphill climb," on the assumption that "[i]f a person is a felon, he ordinarily knows he is a felon."[6] *Greer*, 593 U.S. at 508. As a result, "if a defendant was in fact a felon, it will be

---

[6] The word "felon," as used in *Rehaif*, *Greer*, and other § 922(g)(1) decisions, is a shorthand reference to anyone within the sweep of the prohibition, *i.e.*, in relevant part, someone convicted of (1) a felony punishable by more than

difficult for him to carry the burden . . . of showing a 'reasonable probability' that, but for the *Rehaif* error, the outcome of the district court proceedings would have been different." *Id.* at 509.

Difficult, but not impossible. Twice now, the Fourth Circuit has held that a *Rehaif* error was prejudicial to defendants who were, as a matter of law, prohibited from possessing a firearm. *See Heyward*, 42 F.4th at 467–70; *United States v. Barronette*, 46 F.4th 177, 199–201 (4th Cir. 2022). These cases bear striking similarities to Smith's.[7]

*Heyward*, like this case, involved a defendant who pled guilty without an instruction on the knowledge-of-status element. 42 F.4th at 466. The record showed he had "persistently denied" awareness of his prohibited status, "repeatedly noting that he had been convicted of a misdemeanor for which he had received a six-month sentence." *Id.* at 468. When a prosecutor in a related state proceeding asked whether he was "legally allowed to have a gun," he said that he could and that he was "not a felon right now." *Id.* at 467–68 (emphasis omitted). When that prosecutor pressed him about past convictions for cocaine and firearm possession, he responded "[y]eah, but I pleaded to a misdemeanor and got six month[s] probation." *Id.* at 468 (emphasis omitted). And when the prosecutor noted that the drug offense had "carrie[d] over a year" and asked whether that meant federal law barred him from possessing a gun, he said "I guess so. It says on my gun act I pleaded to a misdemeanor . . . ." *Id.* Later, when the § 922(g)(1) court asked if the defendant had been a "convicted felon" at the time of the possession, he referred the question to his attorney, and only "[a]fter that consultation" responded yes. *Id.* And in a letter the defendant wrote in connection

---

one year or (2) a state-law misdemeanor punishable by more than *two* years. *See* 18 U.S.C. §§ 921(a)(20)(B), 922(g)(1); *see also Heyward*, 42 F.4th at 468–69 & n.5 (noting the "mild imprecision" of the term); *United States v. Barronette*, 46 F.4th 177, 199–200 (4th Cir. 2022) (similar).

[7] Both cases were decided on plain-error review. While the showing required for collateral postconviction relief is higher *overall* than that required on direct appeal, *Frady*, 456 U.S. at 166, contrary to what the Government argues, the test for prejudice—a common element—is the same in both contexts. *Compare Greer v. United States*, 593 U.S. 503, 507–08 (2021) (direct appeal), *and Heyward*, 42 F.4th at 466 (same), *and Barronette*, 46 F.4th at 198, *with Strickler*, 527 U.S. at 289–91 (collateral attack), *and McClammy*, 2023 WL 4700645, at *3 (same).

12

with his sentencing, he said "I didn't have any felonies in the state only 3 misdemeanors. I did get 6 months probation when I was 21 years old in 2006 for unlawful carry of a gun . . . which made me a prohibited person to have a gun but other than that my record is clean." *Id.* (cleaned up).

*Heyward* deemed the Government's reliance on these exchanges to be misplaced, as "none of [them] squarely confront[ed] precisely what the government would have been required to prove" at trial: that the defendant knew, when he possessed the firearm, "that his prior state conviction was punishable by more than two years of imprisonment." *See* 42 F.4th at 468–69. The panel also described it as a "misstep" for the Government to rely on statements the defendant made *after* the § 922(g)(1) offense—including his admission of a prior disqualifying conviction—where none of those statements "addressed whether [he] had the relevant knowledge at the time of the underlying incident." *Id.* at 469–70. That he had received a one-year suspended sentence and six months' probation for the disqualifying offense "len[t] further strength" to his contention that he did not know the possible punishment exceeded two years. *See id.* at 470. So, too, did the fact that his prior convictions were for state-law misdemeanors. *Id.* (citing *Greer*, 593 U.S. at 519 (Sotomayor, J., concurring)). Finally, in a footnote, the panel indicated it was not moved by the Government's point that "state law would have required the state court to advise the defendant of the maximum penalty for the underlying conviction," even where other courts had thought that fact significant. *See id.* at 470 n.6; *see generally* Government's Supplemental Authorities at 1–2, *United States v. Heyward*, No. 18-4819 (4th Cir. May 6, 2022), ECF No. 77. All this "tend[ed] to show that [the defendant] would have been able to mount a potentially credible argument at trial that he lacked the necessary knowledge to be convicted." 42 F.4th at 470.

*Barronette*, by contrast, involved a defendant who chose to go to trial, but whose jury had not received a knowledge-of-status instruction. 46 F.4th at 198. The facts are otherwise similar.

13

The defendant's prior crimes were all state-law misdemeanors. *Id.* The defendant received just one sentence longer than two years: a term of three years, of which all but three months was suspended. *See id.* at 199. The longest term of custody he served for any offense was seventeen months. *Id.* And he stipulated at trial only "that he had been convicted of a crime punishable by imprisonment for more than *one* year, not *two*." *Id.* at 201 (emphasis in original).

*Barronette* described this record as "devoid of any evidence that [the defendant] knew that he was convicted of a state crime for which the punishment was for more than two years." *Id.* at 200–01. As an initial matter, it observed that those convicted of state-law misdemeanors "might not face the same uphill battle" the Supreme Court described in *Greer*. *See* 46 F.4th at 200 ("While *Greer* opens the door for courts to presume a person knows they are a felon, we do not believe we can apply this simple presumption to . . . a state-law misdemeanant."). It also found it significant that, during the same proceeding at which the defendant was sentenced to more than two years, the judge had "suspended the vast majority of that sentence, raising a question as to whether [the defendant] *actually knew* he had been convicted of a crime punishable by more than two years when he possessed a firearm *several years later*." *Id.* at 201 (emphasis added). To the extent none of those circumstances were enough to prejudice the defendant, the decision "f[ound] it difficult to imagine a case that *would* satisfy" that standard. *Id.* (emphasis in original).

The facts of Smith's case are, at virtually every turn, at least as favorable to him as the analogous facts were to the defendants in *Heyward* and *Barronette*. Start with the details of the underlying offenses. Like the defendants in those cases, at the time of the § 922(g)(1) offense, Smith had only been convicted of state-law misdemeanors. *Compare* (ECF No. 35 ¶¶ 14–17), *with Heyward*, 42 F.4th at 470, *and Barronette*, 46 F.4th 198. Like those defendants, Smith's sentences for those misdemeanors imposed well under two years of actual incarceration. *Compare* (ECF No.

14

39-4 at 1 (three years suspended, five years' probation[8])), *and* (ECF No. 35-1 ¶ 24 (six months'

imprisonment)), *with Heyward*, 42 F.4th at 470 (one year suspended, six months' probation), *and*

*Barronette*, 46 F.4th at 199 (three months' imprisonment, thirty-three months suspended). Like

those defendants, Smith had never served a term of custody longer than two years, and in fact had

served less time in prison than the defendant in *Barronette*. *Compare* (ECF No. 35-1 ¶¶ 22, 24

(ten months and twenty-seven days)), *with Heyward*, 42 F.4th at 470 (none), *and Barronette*, 46

F.4th at 199 (seventeen months). And like the defendant in *Barronette*, Smith's sole sentence of

over two years had been immediately suspended, to a greater degree than that in the other case.

*Compare* (ECF No. 39-4 at 1 (three years, *all* suspended)), *with Baronette*, 46 F.4th at 199 (three

years, thirty-three months suspended).

   The same is true for the details of Smith's § 922(g)(1) proceedings. Like the defendant in

*Barronette*, Smith stipulated only that he had been convicted of a crime punishable by more than

one year, not two. *Compare* (ECF No. 33-2 at 4, 9, 13–14), *and* (ECF No. 33-5 at 2–3, 5, 8), *with*

*Barronette*, 46 F.4th at 201. Like the defendant in *Heyward*, Smith incorrectly stipulated that he

had earlier been convicted of a felony, not a misdemeanor. *Compare* (ECF No. 33-2 at 13–14),

*and* (ECF No. 33-5 at 5, 8), *with Heyward*, 42 F.4th at 468. And in each of the three cases, there

was evidence that the defendant had been informed of the maximum penalties for his disqualifying

convictions—evidence *Heyward* and *Barronette* did not find compelling. *Compare* (ECF Nos. 39-

2, 39-3, 39-9, 39-10), *with Heyward*, 42 F.4th at 470 n.6 (explaining that the panel's "view [was]

not altered" by the fact that state law may have required the defendant to be told of the maximum

---

[8] Because the result would be the same either way, for the first state misdemeanor offense, the Court uses the more
severe penalties reflected in Smith's state-court documents (*i.e.*, an original sentence of three years, all suspended,
with five years' probation, followed by a sentence of two years for the probation violation, of which Smith served ten
months and twenty-seven days) rather than the lighter ones reflected in Smith's federal presentence reports (*i.e.*, an
original sentence of one year, all suspended, with two years' probation, followed by a sentence of ten months and
twenty-seven days). *See generally supra* Section I.A.

penalties), *and Barronette*, 46 F.4th at 201 (noting that the defendant had received a sentence of over two years, then stating that this did not definitively answer whether the defendant "actually knew [that] when he possessed a firearm several years later").

The only arguably meaningful difference between Smith's case and *Heyward* or *Barronette* was the length of the prison term for Smith's probation violation. Unlike the initial penalty, that sentence was not immediately suspended, and was modified downward only upon Smith's later motion. (*See* ECF No. 39-5 at 1; ECF No. 39-6 at 1; ECF No. 39-7 at 1–2.) But even if Smith's knowledge of the length of that sentence were probative of his knowledge of the maximum penalty for the underlying offense—a somewhat sketchy proposition, given its attenuation—the law is clear that a disqualifying state-law misdemeanor is one punishable by a prison term of *more* than two years. *See* 18 U.S.C. § 921(a)(20)(B). A sentence of exactly two years (less than one year of which was served) for a probation violation (and not the underlying offense) does not nudge Smith's case beyond the realm of analogy to *Heyward* and *Barronette*.[9]

All of this together creates a "reasonable probability" that Smith would have foregone his plea and gone to trial. Smith's case involves the same basic problem as *Heyward* and *Barronette*: a state-law misdemeanant who received suspended sentences and/or terms of custody shorter than two years may not be aware of much more than the headline fact of his actual prison time. *See Heyward*, 42 F.4th at 470; *Barronette*, 46 F.4th at 201. That defect may be even more pronounced where, as here, the alleged § 922(g)(1) offense does not occur until years later. *See Barronette*, 46

---

[9] Given these on-point, binding decisions—both of which issued after the briefing on Smith's petition had closed—the Court has no reason to consider the Government's out-of-circuit cases rejecting purportedly similar *Rehaif* claims. *E.g., United States v. Burghardt*, 939 F.3d 397 (1st Cir. 2019); *United States v. Bryant*, 976 F.3d 165 (2d Cir. 2020); *United States v. Miller*, 954 F.3d 551 (2d Cir. 2020); *United States v. Huntsberry*, 956 F.3d 270 (5th Cir. 2020); *United States v. Williams*, 946 F.3d 968 (7th Cir. 2020); *United States v. Reed*, 941 F.3d 1018 (11th Cir. 2019); *see also Heyward*, 42 F.4th at 470 n.6 (declining to rely on several of those same cases). The two Fourth Circuit decisions the Government does cite on that score are inapposite, each involving a defendant convicted of multiple (actual) felonies who had served a term of at least five years in prison. *See United States v. Caldwell*, 7 F.4th 191, 213 (4th Cir. 2021); *United States v. Hobbs*, 24 F.4th 965, 972–73 (4th Cir. 2022).

F.4th at 201. Again, Smith need not prove he would in fact have chosen to go to trial, much less

take on "the added burden of establishing that he probably would have been acquitted." *Heyward*,

42 F.4th at 466. He need only show a reasonable likelihood of that choice—something that can be

true even if, objectively speaking, the choice is a bad one. *See id.* at 466–67. Smith has carried

this burden. After all, "there must be *some* cases where a *Rehaif* error warrants" relief, "lest [the

lower courts] risk closing the door [the Supreme Court] deliberately left open." 46 F.4th at 201

(emphasis added). And if this is not one of them, it is "difficult to imagine" one that is. *See id.*

      Smith has satisfied the prejudice element of the cause-and-prejudice inquiry.

## B.    Smith Has Shown His Entitlement to *Coram Nobis* Relief.

      Having determined that Smith has not procedurally defaulted his claim, the Court turns to

the Government's alternative argument: that Smith has not shown an entitlement to *coram nobis*

relief as such.

      Again, it is undisputed that the trial court erred in not instructing Smith about the

knowledge-of-status requirement. But the Government posits that the Court's error was not "of

the most fundamental character," the fourth and final *coram nobis* element. (ECF No. 39 at 11.)

Because the Government does not contest the first three elements, and seeing no other reason to

think they are not met,[10] the Court focuses primarily on the last.

      An error "of the most fundamental character" is one that has "rendered the proceeding itself

irregular and invalid." *Bereano v. United States*, 706 F.3d 568, 576 (4th Cir. 2013) (quoting *United*

---

[10] Again, the first three elements are that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; [and] (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III." *Lesane*, 40 F.4th at 197 (citation omitted). Because Smith has completed his sentence, (*See* ECF No. 35 at 6), no other remedies—like the "more usual" prospect of direct appeal, or even the highly unusual option of habeas relief—are available. As discussed in the context of the cause-and-prejudice inquiry, *see supra* Section III.A.1, Smith had a valid reason not to attack his conviction earlier. And the "possibility that a conviction for a crime that [the petitioner] did not commit . . . will affect a sentence in some future case" is enough to satisfy the adverse-consequences requirement. *Lesane*, 40 F.4th at 204.

*States v. Mayer*, 235 U.S. 55, 69 (1914)). Put another way, such an error is one "that has resulted in a complete miscarriage of justice." *Id.* (quoting *United States v. Bruno*, 903 F.2d 393, 396 (5th Cir. 1990)). The Fourth Circuit has divided this inquiry into two parts: (1) whether a petitioner's claim of error would have prevailed on direct appeal and (2) whether *coram nobis* relief "is required in order to achieve justice." *Mandel*, 862 F.2d at 1074; *see also Bereano*, 706 F.3d at 577.

Start with Smith's prospects on direct appeal. Because Smith did not raise his *Rehaif* argument before the trial court, his direct appeal would have been reviewed for plain error. *See Heyward*, 42 F.4th at 465. That would have required him to show that (1) the error was "plain"; (2) the error affected his "substantial rights," meaning that there was "a reasonable probability that, but for the error, the outcome of the proceeding would have been different"; and (3) the error "had a serious effect on the fairness, integrity[,] or public reputation of judicial proceedings." *Id.* (quoting *Greer*, 593 U.S. at 507–08).

The first two plain-error elements are easily met. *Rehaif* errors are plain. *Heyward*, 42 F.4th at 465; *Barronette*, 46 F.4th at 198. And there is a "reasonable probability" that, but for his *Rehaif* error, Smith would have chosen not to go to trial.[11] *See supra* Section III.A.2.

The third plain-error element also breaks in Smith's favor. Based on "case-specific and fact-intensive" inquiries into their respective records, *Heyward* and *Barronette* held that declining to remedy their *Rehaif* errors "would seriously affect the fairness, integrity, and public reputation of judicial proceedings." *See Heyward*, 42 F.4th at 471 (quoting *Puckett v. United States*, 556 U.S.

---

[11] The Court does not credit the Government's contention that, rather than offering affirmative evidence of his lack of knowledge, Smith states only "that he 'believe[s] the government would have been unable to establish [his] alleged knowledge of felon status beyond a reasonable doubt.'" (ECF No. 39 at 15 (first alteration in original) (quoting ECF No. 33-4 at 2).) Smith does not have to show actual innocence to survive plain-error review of a *Rehaif* error. *See Greer*, 593 U.S. at 520 (Sotomayor, J., concurring); *Heyward*, 42 F.4th at 467.

129, 142 (2009)); *Baronette*, 46 F.4th at 201 (same). Because those cases are on all fours with Smith's, Smith would have been entitled to the same relief. *See supra* Section III.A.2.

Turn next to whether *coram nobis* relief "is required . . . to achieve justice." Once again, *Heyward* and *Barronette* are instructive. *Heyward* observed that the lower court's error "resulted in [the defendant] unknowingly agreeing that the government need not advance proof of the knowledge-of-status element," despite evidence that he had not known of his status at the relevant time. 42 F.4th at 471. That "far from ordinary" circumstance was enough to warrant vacatur. *Id.* Likewise, *Barronette* explained that its record "call[ed] into question whether a jury would have convicted [the defendant] had they been required to find beyond a reasonable doubt" his knowledge of status. 46 F.4th at 201. That, in turn, "present[ed] circumstances in which a miscarriage of justice would . . . result" if the conviction were affirmed. *Id.* (omission in original).

That reasoning applies with equal force here. As *Heyward* explained, "[w]ith such significant consequences at stake, the integrity and public reputation of convictions obtained via guilty pleas rest in significant measure on the fact that the defendant was fully informed before entering the plea." 42 F.4th at 471 (citing *Boykin v. Alabama*, 395 U.S. 238, 243–44 (1969)). And when the record "raise[s] obvious—and troubling—questions about whether [the defendant] would have [pled] had he been fully and correctly informed," allowing a plea to stand impugns the basic fairness of the judicial process. *Id.*; *cf. Barronette*, 46 F.4th at 471.

It is of no moment that *Heyward* and *Barronette* were decided on direct appeal. True, rather than asking whether a mistake is "of the most fundamental character," plain-error review asks the slightly different question of whether the mistake "had a serious effect on the fairness, integrity[,] or public reputation of judicial proceedings." *Heyward*, 42 F.4th at 470–71 (quoting *Greer*, 593 U.S. at 508); *Barronette*, 46 F.4th at 201 (citation omitted). And the Fourth Circuit has cautioned

19

that, when assessing whether an error is "of the most fundamental character" for *coram nobis* purposes, "the standard . . . is more stringent than the standard applicable on direct appeal." *Bereano*, 706 F.3d at 577 (quoting *Thomas v. U.S. Disciplinary Barracks*, 625 F.3d 667, 670 n.3 (10th Cir. 2010)). But Smith's case is little different than *Heyward* and *Barronette*. *See supra* Section III.A.2. And *Barronette* described its own events as nothing short of a "miscarriage of justice"—the same standard that courts have applied in the *coram nobis* context. *See Barronette*, 46 F.4th at 201; *Bereano*, 706 F.3d at 577. Whatever daylight might exist between the analogous *coram nobis* and plain-error standards, it is inconceivable that a "miscarriage of justice" would be less of a miscarriage for one standard than the other.

Because he has met each of the requirements for the writ, including that his *Rehaif* error be "of the most fundamental character," Smith is entitled to *coram nobis* relief.

## IV.    CONCLUSION

For the reasons above, the Court is persuaded that Smith did not procedurally default his *Rehaif* claim and that he meets the requirements for *coram nobis* relief. His request for a writ of error *coram nobis* will be granted, and his conviction will be vacated.

Accordingly, it is ORDERED that:

1.    Defendant-Petitioner Monroe Harold Smith's Petition for Writ of Error *Coram Nobis*, (ECF No. 33), is GRANTED. His November 2005 judgment of conviction for one count of possession of a firearm by a convicted felon, (ECF No. 13), is VACATED.

2.    Smith's Motion to Seal, (ECF No. 34), is GRANTED.

DATED this **30** day of June, 2025.

BY THE COURT:

James K. Bredar
United States District Judge